868 So.2d 1259 (2004)
Jay McGILTON, Appellant,
v.
L. Dana MILLMAN, Appellee.
No. 4D03-953.
District Court of Appeal of Florida, Fourth District.
March 24, 2004.
Charles E. Ray, Port St. Lucie, for appellant.
Richard G. Bartmon, Boca Raton, and Kevin H. Hendrickson, Fort Pierce, for appellee.
*1260 POLEN, J.
This appeal arises from an order of the guardianship court directing Jay McGilton to return $35,081 to Dana Millman in her capacity as guardian for her grandmother, Catherine McGilton. For the reasons outlined below, we reverse that order.
On August 2, 2002 L. Dana Millman was appointed plenary guardian of the person and property of Catherine A. McGilton. Thereafter the court ordered Jay McGilton, previously the ward's attorney-in-fact, under the power of attorney, to file an accounting of the ward's assets and to return all assets to Millman as the guardian.
After an accounting was filed by Jay McGilton there were objections raised due to numerous large sums of money that were missing from the ward's assets and were now unaccounted for. In part, the accounting showed that McGilton paid $35,000 to purchase some McGilton Company stock. Millman questioned whether there was even such a company. In addition, she pointed out large discrepancies in the assets of the ward as well as several cash withdrawals from the ward's assets. Millman contended that there was $88,000 withdrawn in five months. She claimed that the misappropriation took place while McGilton held the power of attorney, before Millman was appointed guardian.
Millman sought permission from the court to bring an independent lawsuit against McGilton for the alleged misappropriation of the funds. There was no sworn testimony taken at the hearing. At the conclusion of the hearing, the court ordered that McGilton return the $35,000 for the stock certificates and held that Millman could initiate a lawsuit based on the allegations of misappropriations. The portion of the order requiring McGilton to return $35,000 is the subject of this appeal. McGilton raises three issues on appeal. We find two of them persuasive.
Initially, McGilton contends the guardianship court had no authority to rescind a transaction occurring before the guardianship. We disagree. Section 744.361, Florida Statutes (1997), specifically includes pre-guardianship assets in the property that the guardian shall, with court approval, take possession of. Section 744.361 details the powers and duties of guardians. Section 744.361(8) provides as follows:
The guardian, if authorized by the court, shall take possession of all of the ward's property and of the rents, income, issues, and profits from it, whether accruing before or after the guardian's appointment, and of the proceeds arising from the sale, lease, or mortgage of the property or of any part. All of the property and the rents, income, issues, and profits from it are assets in the hands of the guardian for the payment of debts, taxes, claims, charges, and expenses of the guardianship and for the care, support, maintenance, and education of the ward or the ward's dependents, as provided for under the terms of the guardianship plan or by law.
§ 744.361(8), Fla. Stat. (emphasis added).
Under the plain language of the statute, the fact that the stock purchase took place prior to the appointment of the guardian has no bearing on whether Millman was entitled to seek possession of the assets.
McGilton next contends the guardianship court erred by ordering him to pay $35,081 to the guardian without having first received any evidence. We agree. At the conclusion of the hearing, although not clearly, the court explained the basis for its decision.
Mrs. Millman was appointed guardian in this case, the guardian as you know, Mr. *1261 Ray and Mr. Hendrickson, has an obligation to try to muster up and get all the assets of their ward, in this case, the grandmother and they see some questionable procedures that have taken place that have exhausted some of the ward's funds inappropriately, than I think they need to be able to pursue that and make that determination, so I'm going to give them the opportunity to do that so we can get started because she says through counsel that there are problems here and I need an opportunity to get Grandmother's money back because I don't think it was appropriately spent on her behalf and I doubt she knewI don't know this, but that she gave permission or agreed to do this, but that she gave permission or agreed to do this or was not in a position to do and her funds are for her, not for somebody else, for stock in Texas that may not have oneyou know, I could see, Mr. Ray, if he had bought IBwhat is it, IBM, General Electric, even though market's down some, they're solid, old-line companies would give you the GE stock and if it went down, fine, it went up, great, we made some money, but sheshe has stock, but see, we don't know whatyou know, a red flag comes up when we callwhen we talk about the McGilton company or something, I mean, who in the world? You know, maybe it ismaybe they got equipment, maybe it is worth $35,000, I don't know, but we're going to find out.
This portion of the record makes clear that the guardianship court was concerned about some portions of the accounting. However, more importantly for purposes of this appeal, the court's conclusions also make it clear that the court reached no conclusions about the nature of this stock transaction. The judge concluded with "we're going to find out," yet never found out.
The second district explained that "[a] court appointed guardian of an incompetent may initiate and maintain an action to preserve his ward's property. If the guardian can establish that the equities are in favor of and that the relief requested is in the best interest of his ward, the court is authorized to grant relief." Cohen v. Cohen, 346 So.2d 1047 (Fla. 2d DCA 1977). Cohen clarifies that if a guardian needs to take action to preserve the property of a ward, it is appropriate to file a cause of action against them with the guardianship court's approval. In this case Millman sought, and obtained, approval to file a cause of action.
In sum, Millman requested that the guardianship court permit her to file a cause of action against McGilton based on his alleged misappropriation of the Ward's assets. The court order specifically authorizes Millman to initiate a lawsuit. However, as of yet, no hearing has been held and no court has found any misappropriation. As a result, ordering McGilton to repay the $35,000 rather than ordering him to simply turn over the stock certificates was in error. The correct mechanism to pursue this claim is in a separate civil action the pursuit of which the guardianship court has already approved.
Last, McGilton contends the trial court erred in ordering rescission of the transaction without any written request by Millman for the rescission and without proper notice. More specifically, McGilton claims that he was not afforded adequate due process. We agree.
"Due process in a court proceeding demands that the defendant be given fair notice and a reasonable opportunity to be heard before a judgment is rendered." Hinton v. Gold, 813 So.2d 1057, 1060 (Fla. 4th DCA 2002). "The courts of this jurisdiction have consistently recognized that, *1262 as a general rule, a violation of due process occurs when a court determines matters not noticed for hearing and not the subject of appropriate pleadings." Kanter v. Kanter, 850 So.2d 682, 685 (Fla. 4th DCA 2003).
Due process concerns are equally viable in guardianship proceedings. In re Guardianship of King, 862 So.2d 869, 870-71 (Fla. 2d DCA 2003)(quoting Joan L. O'Sullivan, Role of the Attorney for the Alleged Incapacitated Person, 31 Stetson L. Rev. 687, 702, 706 (2002)).
In the case at bar, the notice of hearing simply stated that a hearing was going to being conducted on the "objections to accounting by power of attorney and petition to maintain an action to surcharge the power of attorney Jay McGilton for misappropriation of the ward's assets." Further, the wherefore clause in the objection to accounting filed by Millman reads as follows:
WHEREFORE, the Petitioner objects to the filing of the Final Report and Accounting by the agent under the durable power of attorney and requests the entry of an order allowing the guardian of the property to maintain an action for the purposes of recovering the property which has been misapplied and misappropriated to the benefit of the agent, Jay McGilton and set this cause for a hearing in order to allow the guardian an opportunity to establish the loss suffered by the ward as a result of the improper administration of the ward's estate by the power of attorney; attorney's fees and costs incurred by the ward for the services of the petitioner and counsel for protecting the ward's interests and safeguarding the administration from the mismanagement of Jay McGilton; reimbursement of excessive, needless and unessential attorney's fees paid from the ward's assets to the law office of Thomas J. Farley and grant any other relief deemed just and proper by this court.
Nothing in the notice of hearing, or the objection to accounting filed by Millman, mentions rescission of the stock purchase transaction and return of the purchase price to the ward. As a result, by considering this issue and ultimately ruling on the matter, the guardianship court violated McGilton's due process rights.
For these reasons we reverse the portion of the order requiring McGilton to return the $35,000.
REVERSED and REMANDED for further proceedings consistent with this opinion.
WARNER and KLEIN, JJ., concur.